The opinion of the court was delivered by
Smith J.
This is an action on the case, brought.by the defendant in error, Nathaniel Cornwell, against Mason Denison, the plaintiff in error, who was defendant below, in which a verdict and judgment for three hundred dollars were rendered in favour of the former. The declaration is in indebitatus assumpsit, and.contains four counts, for goods, &c. sold and delivered, for work, labour and services, for money lent and advanced, and for money had and' received. The facts were as follows: — Nathaniel Cornwell, the plaintiff, at the age of twelye years, went to reside with the defendant,' Mason Denison, and continued to live with him and in his employ until he was twenty-one years old, a period of nine years. During a portion of that time he went to school, but, during the greater part of it,;he laboured for the defendant, who promised his mother, that if he would remain with him, he, the defendant, would do well by him, would send him to school, give him a farm, and an education to qualify him. for the practice of medicine. On the 3d of September, 1817, the defendant was duly chosen and appointed guardian of the plaintiff. It does not appear, whether the promise to the mother was made before or after that appointment. On the trial, the defendant’s counsel prayed the court, inter alia, to charge the jury, that the plaintiff could not recover in this action, for services rendered by him to the defendant, while he was his ward; but, the court .charged the jury, that <£ the guardian, as such, had no right to the services of his ward. And if a guardian omit to procure a proper place for his ward, but keep him in his own employ, and agree with the mother, that he will give him a medical educa *377 tion, and a farm, if the ward serve him faithfully, and the guardian file no account in the Orphans’ Court, the ward, on his arrival at the age of twenty-one years, if he had laboured for.the guardian, and had been faithful, might treat him as a stranger; and in this form of action, submit his case to this tribunal.”
To this part of the charge the defendant excepted, and has here assigned it for error. The question submitted to this court, is, whether a ward, after coming of age, can sustain against his guardian, in the Court of Common Pleas, an action of indebitatus assumpsit, for work, labour, and services done and performed by him during his minority for his guardian — and does this action lie there? The guardian being ira loco parentis, the power and reciprocal duty of guardian and ward, are for the time being, the same as those of a father and child, and it is not contended, that a son or child can bring or sustain such an action, for services and labour rendered during his minority against his parent. The parent is entitled to the benefit of his child’s labour whilst living with Him, and maintained by him. The relation subsisting between parent and child, forbids the idea of an action for such a cause; nor has any such, within my knowledge, ever.been, sustained. As then, the guardian comes in loco parentis, why then, it-may be asked, should the ward recover in an action of assumpsit, from his guardian, for labour and services rendered during the time that he lived with him, and was maintained by him, and had a parental authority over him, when it is admitted, that a child could not, under similar circumstances, recover from a parent? A parent can bind out his son to learn a trade, either that of a farmer, mechanic, or other trade; and the same authority extends to a guardian over his ward, or perhaps, if the guardian be a farmer or mechanic, he may keep his ward, and use him as his own son;:in which case, no action for work, labour, and service, can be sustained against the parent by the child, or against the guardian by the ward. The promise to the mother cannot alter the law, nor is the actjon attempted to be sustained on that ground. It is, however, contended, that this promise went to raise an implied undertaking by the guardian for the benefit of the ward; but the obstacle in the way of that'construction is, that none, except the guardian, could enter into a valid contract for his ward. The mother clearly could not; for though entitled to respect and reverence, she had not the care of his person or estate, nor any legal control over him. As to these, she was a stranger; nor could she, by any law, consent to any contract for him, his guardian alone had the care of his person and éstate, and stood at this time, as to him, in the place of a parent; he only, or with the leave of the Orphans’ Court, could bind him out, and if necessary, énter into contracts for him; and hence it is, that a promise made,- as in this case, to the ward, could not bind the guardian. It cannot be contended, that if a parent were to say to a stranger, “ In cáse my son should •behave faithfully to me, whilst under age, I will give him a farm *378 on bis arrival at the age of twenty-one years,” he would be liable to ah action. The son is bound in filial duty to behave so, and the parent’s promise would be wholly without consideration. Neither. would a guardian, in loco parentis, be liable, to an action by his ward on such a promise. As, therefore, a son, who had rendered services-in his minority to his parent, could not, on his coming of age, tre.at his parent as a stranger, and sustain an action for such services against him; so, a ward cannot maintain- an action for similar services on his arriving at the age of twenty-one years, against his guardian, with whom he has lived during his minority. The want of parties able .to contract with each other, removes, in either case, the foundation of an action at common law. It, therefore, appears to me, that the court below erred in charging the jury, that if the ward had laboured for the guardian, and been.faithful, be might,on his arriving at age,' treafhis gúardian-as a stranger, and submit his case in this'form of action to the Court of Common Pleas'. Wc do not, however, mean to say, that a ward cannot, under any circumstances, or in any mode, recover from his guardian a proper compensation for services or labour performed during his minority.- There may be cases, .(such as a guardian hiring out his ward to others,-and receiving the price of his labour,.or of charging 'the ward for his hoarding and clothes, whilst' he was living with, and labouring for him,) in which,- the ward‘ought to be paid; but,' such cases properly belong to the decisions of the Orphans’ Courts, when-legally brought before them. The guardian, when the ward eomos of age, is bound to give an account of all his transactions, on behalf of his ward, and to answer for all losses occasioned by his wilful default ormegligence. All we mean to say is', that the eompensation, cannot be ascertained in an action, like the present, in the Court of Qofpmon Pleas. In. this case the guardian has not settled any account of the ward’s estate, in the Orphans’ Court-of the proper county. He ea.n' be cited so to do; it is not too late. That court is, in"our opinion, the appropriate tribunal to settle the accounts of guardians and wards. -It has the care and control of the subject-m.atter, and is clothed with ample powers to enable it to do full and complete justice to the parties.
' The first error assigned has been.abandoned, or rather, it appears to us, that no such exception, as stated, was taken in the court, below. But, the judgment of the Court of Common Pleas müst be reversed for the reasons above-mentioned.
Tod, J.
'It obliges me to have a great doubt of the soundness of any opinion of mine', to find it opposed by the opinion of all the rest of the court. I disagree on one or two points. An infant, a party to a’con tract, is not bound by it unless he chooses to be bound. The other party has not.the same election.
“An infant may sue on a contract, of marriage with a person of full age, though the infant cannot be sued.
*379 “So, he shall maintain covenant, assumpsit, &c., though he himself is not bound. J2 fortiori, where the money or consideration on the part of the infant is- paid, and the consideration executed.
“A lessee can in no case, avoid the lease on account of the infancy of the lessor.”
These extracts, containing matters which may be found -in every book on the subject, are perhaps not wanted to show, that as fajas respects the question of infancy, the contract established by the jury in this case, is binding up'nri Denison at any rate: for, without any precedent, the rules of fair dealing, and of common sense, would probably, teach us, that a man of full age, dealing with an infant, after getting all that he is to get by the agreement, shall not be suffered to withhold the equivalent, by setting up the plea of infancy against the infant himself.
Then, was the contract valid in other respects? Being made by the mother is no objection. “ He who is to have the benefit of the promise'may bring the action. Upon a promise tó B. to pay twenty pounds to an infant at his full age, and to educate him in the mean time, the infant shall have the action.” 1 Com. Dig. 206. Felton v. Dickenson, (10 Mass. Rep. 287,) was a case like this in many respects. It was indebitatus■ assumpsit, for work and labour by the plaintiff, while a minor: it was a contract, not made by the infant himself, but by his father for him: it vvas an alternative promise of money or-land on the infant’s coming of age: and it was general indebitatus assumpsit, on a special contract, and the plaintiff l-eeov'ered.
So far, I am very glad to be able to say, we all seem to be agreed. The whole difficulty, or at any rate, the whole difference of opinion’ on the bench, arises,from the characters of the guardian and ward heretofore sustained by the parties. I think there is nothing in that matter to bar this action.- There is no evidence, that the contract with the mother had any connexion at, all with the guardianship, nor that Denison ever did á single actas guardian of the boy to the hour of the trial, or filed an a'ccount, or offered to file one, or ever accepted the guardianship directly, or indirectly. The evidence would-strongly imply, that the alleged guardianship did not exist until after the contract. Now, I do hold it to be not according to the benignity of the law, that infancy shall be suffered to be the instrument of mischief to itself, or that the infant here should, by one imprudent and most unnecessary act, be mád'e to forfeit his stipulated wages for nine years of labour. And if Mr. Denison was consenting at the time, and accepted-the guardianship, I do not know that it would mend his case; for,-as the boy lived with him at the time, the presumption of law, and of fact too, would be irresistable, that the whole business Of guardianship was the suggestion and act of Mi-. Denison, himself. But I will not rely upon any of these mattei-s. I will concede the appointment of guardian to *380 be legal and proper; yet still,-in my opinion, this action can be sustained.
It is supposed that the plaintiff might.possibly recover on any other contract with' his guardian, yet he cannot recover in a demand of wages for labour, because, if the services were rendered, he, the guardian, as such, was entitled to them without any bargain, and without any'compehsation.. All.which I must deny, for, in my opinion, the la-w gives to a guardian no right to any services whatever from the ward. And if the law did give such rjg'nt, the guardian would,-1 think, be competent to wave the provisions, of the-law, and agree ufion terms for himSelf by a special contract. In Wilson v. Church, where the plaintiff was a 'public pauper, assigned and bound to work towards his own support, and had made an agreement' with the assignée, the employer, to get special wages to himself for special services., and had sued for the wages, and it was objected that the defendant was entitled to. all the services without any bargain, yet the court said it, was too lato for the defendant to talk of his legal.rights after his own contract, and gave judgment for the plaintiff. (1 Pick, 23.) But in the present case, it seems to me, that the guardian, had not the least - pretence of legal 'right to the servicés of the ward. As to standing in loco parentis, the guardian was not so for'any purpose applicable to this suit. A father is bound by .the law in all cases to support his infant child in sickness and in' health: while the guardian is bound to nothing of the kind. This I take to be a -good reason why .the father is entitled to services and the guardian not entitled to them. Lastly, if the plaintiff is entitled to redress, must he go into the Orphans’ Court, for it? I think not. The argument of the counsel of the defendant in error proves very clearly to my mind, that the Orphans’ Court has no more jurisdictipn of the matter, than it would have in case a female ward should demand damages ofhpr former guardian for. breach of a contract of marriage, or in case a ward should sue his guardian for any personal injury, or bring ejectment for land seized during the guardianship and not restored. Here the objection' is not made until after a trial at law upon the merits. But if it had been made at first, it ought not, in my opinion, to prevail. It could never be looked for, that a supposed wrong-doer would fairly put down against himself a full, account of his own breach .of faith. And it would seem to be .as contrary to all the rules of justice as it is to-practice, and experience, to permit a defendant, by setting up a jurisdiction in.the Orphans’ Court, not only to evade a jury trial, but to make himself a witness in his own case on a question of damages. So that my opinion is, the Court below was substantially right, and their judgment should be affirmed.
Judgment reversed, and a venire facias de novo awarded.'