MICHAEL BOWMAN, *against* the executors of HENRY HERR, deceased.

Previously to the settlement of an account in the Orphans Court, an action of *assumpsit* will not lie by the ward against his guardian, to compel such settlement and payment of the balance.

The Orphans Court has full power and authority to settle the account of a guardian, and if a balance is found to be in his hands, when the ward arrives at full age, to compel the payment of it, by attachment or sequestration of the goods or lands of the accountant.

A settlement made by the guardian once in every three years, in pursusuance of the 3d section of the act of the 31st March, 1821, is not conclusive upon the ward, but may be impeached upon the final settlement of the account when the ward arrives at full age.

Upon the death of a guardian before the settlement of his account, his representatives may be cited and compelled to settle it ; and the Orphans Court may exercise the same power to compel them to pay over the balance as they would against the guardian himself.

APPEAL by the plaintiff from the decision of HUSTON, J. at a Circuit court held in Lebanon county.

*Henry Herr*, the defendant's testator, had been the guardian of *Michael Bowman*, the plaintiff, and died without having settled a guardianship account of the estate of his ward which had come to his hands.

The plaintiff *Michael Bowman*, after he arrived at full age, brought this suit against the representatives of *Henry Herr*, his late guardian, and claimed to recover upon a declaration for money had and received for his use.

Upon the trial of the cause, the plaintiff offered evidence of the receipt of money by the defendant's testator, as the guardian of the plaintiff : to which the defendant objected, on the ground that the plaintiff could not support his action, without showing that previously to the institution of it, the guardian or his representatives had settled a guardianship account in the Orphans court.    This objection having been sustained by the court, the plaintiff took a nonsuit, which he afterwards moved the court to take off, and which being refused, he entered this appeal.

In this court the cause was argued by
*Elder* and *Hopkins*, for plaintiff appellant.
*Kline* and *Weidman*, for appellees.

The opinion of the court was delivered by

ROGERS, J.—At the common law a guardian is liable to an action of account render, but there is no instance of an action for money had and received, having been sustained against him, before settlement of his account.    The remedy by account render, is but seldom resorted to, but the practice is for the ward to file a bill in chancery, calling the guardian to account.    The Equity Courts take jurisdiction on the ground of their general superintendence of all infants, and because the guardian is a trustee ; and it is the peculiar duty

(Michael Bowman, *v.* the executors of Henry Herr, deceased.)

of chancery to ensure the faithful discharge of a trust. This course has many advantages, as the guardian may be examined on oath, and is compellable to produce books and papers, and other written documents, that may lead to a thorough investigation of the case, and a just decision of the controversy. *Co. Lit.* 89. 1 *Blac. Com.* 463. *Bac. Ab.* Title guardian and ward. The same results may be obtained in the action of *account render*, although in a mode more troublesome and expensive. But this cannot be done in *assumpsit*, which may be the reason, that no such action has ever been attempted. As early, as the 27th March, 1713, all authority in relation to guardian and ward, was committed to the Orphans Court, with an appeal, as the law now stands, to the Circuit Court, and afterwards to the Supreme Court. They were vested with the power of appointing guardians, and it is made the especial duty of the court to see that the trust is faithfully discharged, and for this purpose, they are clothed with authority, at any time to exact security from the guardian, may discharge him on his own application, or may dismiss him for malfeasance, or any other just cause, and compel him by attachment or sequestration to pay over the balance in his hands, and surrender all muniments of title in his possession.

In the 11th section of the act, it is directed, that when the minor has been fully paid, satisfaction shall be entered in the Orphans Court. When bonds have been taken in pursuance of the act of the 30th March, 1821, the condition of the bond is, to render a just and true account in the Orphans Court, and to deliver up the property of the minor, agreeably to the decree or order of the court. The third section of the act requires the guardian to settle once in every three years, in the same court, and at such other times as may be required by the court. These various acts evidently show that the legislature intended to devise a system complete in itself, by the erection of a tribunal with all the power necessary to afford adequate relief. Which view of the case, taken in connection with the act, which prescribes, that when a remedy is provided, a duty enjoined, or any thing is directed to be done, by an act of assembly, the directions of the act shall be strictly pursued, induced the opinion, that the Orphans Court alone, had the power to compel the settlement of a guardian's account. In *Denison* v. *Cornwell,* 17 *Serg. & Rawle,* 378, it was decided, that the Orphans Court were the proper tribunal to settle accounts between guardian and ward. For this purpose, they are clothed with the authority of a court of equity. They may examine the guardian on oath, to charge or discharge him, may compel the production of books or other documents, and in general, may exercise every authority necessary to enforce a faithful performance of the trust. The accounts of guardians consist of a variety of items, some very trifling in amount,

37

(Michael Bowman, *v.* the executors of Henry Herr, deceased.)

and if the investigation must be conducted on the principles of the common law, injustice of the most glaring kind may frequently be the result, for unless the guardian be prepared in case of a disputed account with the proof of every voucher, his charge before a common-law court will be disallowed. And to make this the duty of a guardian, in the course of a trial, which is frequently terminated in a single day, would be such an intolerable hardship, as to prevent persons from accepting a trust which cannot be attended with profit, but must necessarily result in trouble, and eventual loss. The Orphans Court may on the contrary, in the exercise of a reasonable discretion, allow time to procure proof of expenditures, or may supply the want of a regular voucher, (which ought to be done with great caution,) by the oath of the guardian himself. And this should be permitted, when from the nature of things, no regular vouchers can be attained, as for travelling expenses, going to, and returning from school, and others of a similar character. The office of guardian is one of peculiar trust and confidence ; it is therefore of importance that we should adopt no rule, which may prevent men of the first integrity and character, from accepting the trust.

It is said, that *Denison* v. *Cornwell* is contrary to the practice. Of this practice, so confidently relied on, no one member of the court is aware, and if so general, as to furnish a rule for decision, it is singular, that not a trace of it should exist in the books. The case of *Denison* v. *Cornwell*, has alone been produced, and which establishes a rule directly the reverse. Whether in any case, a minor would be concluded by an account settled in his minority, it is not necessary to decide. It is, however, plain he would not be prevented from impeaching an account, settled in the Orphans Court, in pursuance of the third section of the act of 1821. In directing a settlement, once in every three years, the legislature intended it as a measure of precaution, an additional security to the infant. By the settlement, the court and the friends of the infant, have an opportunity of knowing the situation of the estate ; if there is any reason to apprehend injury to the rights of the minor, measures may be taken to guard his interests, either by dismissing the guardian, or compelling him to give additional security for the performance of his duty. Such a settlement would not conclude the infant, and it may be doubtful, whether it would be even *prima facie* evidence in favour of the guardian. The Orphans Court would have the power to compel a re-settlement of the account, after the infant attained his age. Such a settlement alone would be conclusive, upon both guardian and ward.

Doubts have been expressed whether the Orphans Court have power to enforce their decrees. It has been said, that resort must be had for that purpose to the common law courts. After settlement, an action of *assumpsit* will lie, to enforce payment of the

(Michael Bowman, *v.* the executors of Henry Herr, deceased.)

balance; but, it is by no means conceded that it is the only, although it is the usual remedy. By the 8th section of the act of the 27th March, 1713, the justices may send their attachment for contempt, and may force obedience to their warrants, sentences and orders concerning any matter or thing cognizable in the same courts, by imprisonment of the body, a sequestration of lands or goods, as fully as any court of equity may or can do. As early then, as the first organization of the court, full and plenary authority has been given them, by attachment or sequestration, to enforce compliance with their order or decrees.

By the death of *Henry Herr*, the guardianship ended, and if there was a balance in his hands, the minor became a creditor of the estate, and this the administrator may be compelled to settle and pay over. Whatever the deceased has received in his individual or fiduciary character, his representatives may be compelled to settle, either by attachment or sequestration, as in the case of the guardian himself.

Judgment affirmed.